BLAKE G. HALL, ESQ.
SAM L. ANGELL, ESQ.
NATHAN R. STARNES, ESQ.
HALL ANGELL STARNES, LLP
1075 S Utah Avenue, Suite 150
Idaho Falls, Idaho 83402
Telephone (208) 522-3003
Fax (208) 621-3008
*ISB Nos. 2434, 7012 & 7484*
bgh@hasattorneys.com
sla@hasattorneys.com
nrs@hasattorneys.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| ANDREA M. LEE, | Case No. 4:14-cv-00160-REB |
|---|---|
| Plaintiff, | **AFFIDAVIT OF BLAIR OLSEN** |
| v. | |
| BLAIR OLSEN, in his individual and official capacities; JEFFERSON COUNTY SHERIFF'S DEPARTMENT; JEFFERSON COUNTY; and JEFFERSON COUNTY COMMISSIONERS, | |
| Defendants. | |

STATE OF IDAHO    )
                 : ss.
County of Jefferson )

Blair Olsen, being first duly sworn upon oath, deposes and states as follows:

1. That I am over the age of eighteen (18) and am competent to testify in this matter. I make this affidavit based on my own personal knowledge unless otherwise indicated. This affidavit is made under the penalty of perjury.

AFFIDAVIT OF BLAIR OLSEN - 1

2. I am the former elected Sheriff of Jefferson County. I served in that capacity since 1988 and at all times relevant to this litigation. I left office in May 2015. I am very familiar with the facts of this litigation and have personal knowledge of the facts and claims in the above-referenced matter.

3. In approximately 1993, I hired Plaintiff Andrea Lee as a part-time driver's license clerk. Lee eventually transitioned to full-time employment as a driver's license clerk. As a driver's license clerk, she was responsible for selling license, interacting with the public and addressing questions related to driver's licenses. The driver's license department was constantly involved with the public. Lee worked as a driver's license clerk until her voluntary resignation on December 31, 2012. She was eventually made a supervisor in the driver's license department. In 2005, Lee also took on the role as my administrative assistant. As my administrative assistant, Lee assisted with some billing related issues in the office. I would sometime ask Lee to assist me with preparing correspondence and keeping records. Other employees in the office would also assist me with those tasks.

4. During the time Lee worked in the Sheriff's Department, she performed her job as asked. She was never subjected to discipline or reprimand for her conduct within the office. I was aware of personal disputes Lee had with other employees in the driver's license department. She was never reprimanded for any personal disputes with other employees.

5. On approximately August 23, 2007, shortly after the Sheriff's Office moved into a new building, I instituted new dress code standards for the Diver's License/Civil department. The dress code standards were circulated to all employees via a memorandum. The memorandum was circulated because the driver's license/civil department had moved into the new courthouse and that department was often the first to address the public when they entered

AFFIDAVIT OF BLAIR OLSEN - 2

the Sheriff's Office. Because they would often be the face of the Sheriff's Office to the public, I wanted to ensure an appearance of professionalism. The dress standards were designed to ensure that the office was professional and business-like. The dress standard did not specifically address male employees because no males were working in the drivers licence/civil department. In fact, from 2007, when the dress standard was circulated, to the date I left office, no male was ever employed in the drivers license/civil department. However, if a male had been employed, they would have been asked to dress in a professional and business-like manner by wearing a shirt and tie. The dress standards are different depending on the department. For example, the dress standards for a detective are different than those of a jail deputy, which would be different than those in the civil department.

6. Shortly before the dress standard was circulated in the drivers license/civil department, I met with Lee and others to discuss the standard. Initially, I had dresses to be worn twice a week. However, after input from Lee and others, I altered the dress standard to wear dress on one day a week. I requested that the skirt be professional looking and that the skirt be knee length. Between 2007 and the time that Lee resigned in December 2012, I never received a complaint about the dress standards from any employee. Lee never complained to me that she felt the standards were inappropriate or discriminatory. Lee was never reprimanded or disciplined for any issue related to the dress standard. In fact, I understood that the employees in the drivers license/civil division liked wearing a dress one day a week. Had I been notified that the dress standard was perceived as being discriminatory, I would have made changes.

7. On June 1, 2010, the Jefferson County Commissioners adopted a "Discriminatory Workplace Harassment Policy and Complaint Procedure." This policy specifically addressed discrimination and provided a mechanism for any employee to complaint about discrimination,

AFFIDAVIT OF BLAIR OLSEN - 3

harassment, or retaliation. All of the supervisors in the Sheriff's Office, including Lee were trained on the discrimination policy. In addition to the supervisors being trained, each employee in the Sheriff's Office was provided with a copy of the discrimination policy. I took instances of harassment and discrimination seriously and would following the complaint investigation procedure outlined in the discrimination policy. The discrimination policy provided a mechanism for investigating and addressing any employees concerns about harassment, discrimination or retaliation. From the date the discrimination policy was enacted through December 31, 2012, the day Lee resigned, Lee never made any complaint to me about discrimination. I am unaware of her ever making any claim of discrimination to anyone in Jefferson County. Attached hereto as Exhibit A is a true and correct copy of Andrea Lee's acknowledgement of the Personnel Policy.

8. In 2011, I noticed a change in Lee's demeanor and her interactions with me and others in the office. Lee was less social and generally withdrawn. I had previously observed Lee act in a similar fashion when her mother passed away and also when she went through a divorce. During these periods of time, Lee was also withdrawn and less social. During these times I tried to give Lee space and support her where I could. When her mother was hospitalized, I visited Lee's mother in the hospital in an effort to support Lee. Following her passing, I did my best to console Lee.

9. When Lee was going through her divorce, she informed me that the family of her ex-husband was spreading rumors about she and I having an affair. I discussed the rumor with her and gave her a hug to console her. Lee was visible upset by the rumor and I did my best to help her calm down and assure her that things would be ok.

10. I became aware that Lee had made allegations against me of improperly using County funds in mid-2012. At no time did I ever reprimand Lee for the report. At no time did I

AFFIDAVIT OF BLAIR OLSEN - 4

ever retaliate against Lee. In fact, Lee retained her position, retained her work assignments, and was not given any new or oppressive assignments. Lee continued to work the same hours, at the same rate of pay, and was permitted to take vacation and sick leave as she customarily did.

11. During 2012, I went through a contested election for the Jefferson County Sheriff's position. In May 2012, I successfully defeated Jeffery Poole for the position in the primary election. In November 2012, the citizens of Jefferson County elected me as the Sheriff. The November election was contested by Ryan Brown, a write-in candidate. During the 2012 election cycle, Lee openly supported my opponents. Lee had openly supported Jeff Poole during the primary election. When Poole lost in the primary election, Lee turned her support to write-in candidate Ryan Brown. I never reprimanded or disciplined Lee for her support of Poole or Brown. At no time did I ever retaliate against Lee for supporting Poole or Brown.

12. The Jefferson County Sheriff's Office subscribes to a national service, Lexipol, for setting policies for the department. Lexipol is a national organization that prepares policy and resources for sheriff's office throughout the United States. The Lexipol policies are written by Lexipol and adopted by the County. In 2012, Lexipol circulated an amended Media Policy (Policy 346). This policy was initially adopted in approximately 1995. On July 30, 2012, the amended Media Policy was circulated. The Sheriff's Office adopted the amended media policy. All employees in the Sheriff's Office were required to read and acknowledge the media policy. Lee signed the acknowledgment of the policy. The policy was not adopted because of a specific incident involving Lee or others. The Sheriff's Office did not prepare the policy, ask that it be prepared, or have any input on the content of the policy. At no time was Lee disciplined for speaking with the media or otherwise speaking about the cell phone. In fact, Lee continued to speak with the media after signing the media policy and was never reprimanded or disciplined.

13. On September 14, 2012, I received a request for PTO by Lee. She indicated that initially she would be taking time off from October 25, 2012 through November 12, 2012. A short time later, Lee changed her request for time off, stating that she would work part of the morning on November 1, 2012 and remain on leave until November 19, 2012. On November 1, 2012, Lee did not show up for work. She was never reprimanded or disciplined for not showing up to work, despite her representation that she would be working. Lee did not return to work on November 19, 2012. On December 2, 2012, Lee informed me that she had complications with her surgery and would be using her remaining PTO and sick leave. It was understood that Lee would be returning to work on December 29, 2012. I was led to believe, by Lee, that she would be returning to work. As December 29, 2012 approached, I reached out to Lee by telephone to verify she would be ok to return to work and that her duties would be covered if not. Lee did not answer her phone and she never returned my call. All of Lee's requests for vacation/PTO/sick leave were granted without issue. Lee was never pressured to return to work. Lee was never told that she would need to return to work or that she would be terminated or disciplined. I accommodated all of her requests for time off.

14. On or about January 2, 2013, I became aware Lee had resigned her position with Jefferson County. Lee left a letter dated December 31, 2012 in my mailbox stating she was resigning. The letter alleged that I was not trustworthy, unethical and immoral and that she was choosing to not associate with me or others in the office that she subjectively deemed to be untrustworthy, unethical, and immoral.

15. At no time did Lee inform me of any perceived discrimination or retaliation prior to her December 31, 2012 voluntary resignation. Lee was never asked to resign or informed that she would be terminated. I never was aware of or observed any discriminatory or retaliatory

AFFIDAVIT OF BLAIR OLSEN - 6

conduct by others. I never retaliated or discriminated against Lee. I had no issues with Lee and believed with the passing of the election that the moral in the office would return to business as usual.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

BLAIR OLSEN

SUBSCRIBED AND SWORN TO, before me the undersigned, a Notary Public in and for said State, this 23 day of July, 2015.

Notary Public for Idaho
Residing at: Bonneville Co., ID
My commission expires: 1/20/18

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing document upon the following this 24th day of July, 2015, by electronically filing with the Clerk of the Court using CM/ECF system with a Notice of Electronic Filing to the following persons:

Kevin Dinius
Michael Hanby
DINIUS & ASSOCIATES, PLLC
5680 E Franklin Road, Ste 130
Nampa, ID 83687
Fax: 208-475-0101
Email: kdinius@diniuslaw.com
Email: mhanby@diniuslaw.com

                                         /S/
                                         BLAKE G. HALL

AFFIDAVIT OF BLAIR OLSEN - 8

**EXHIBIT A**

APPENDIX "A"

ACKNOWLEDGMENT OF RECEIPT OF JEFFERSON COUNTY PERSONNEL POLICY

I, __Andrea Lee__ acknowledge receipt of the Jefferson County Personnel Policy, adopted on January 24, 2011, effective February 1, 2011.

- [x] I understand that it is my responsibility to read and review this Policy.

- [x] I understand that this Policy is not a contract and cannot create a contract.

- [x] I understand that I am obligated to perform my duties of employment in conformance with the provisions of this Personnel Policy Manual and any additional rules, regulations, policies or procedures imposed by the department in which I work whether or not I choose to read the new Policy.

- [x] I understand that this Policy may be modified without prior notice to me.

- [x] I understand that should this Policy be modified that I will be provided with a copy of the modifications.

- [x] I understand that this Policy may be provided to me in either paper format or by electronic access.

DATED this __7__ day of __May__, 20__11__.

_____
(Employee)

I, _____, provided a copy (either electronically or by paper) of the JEFFERSON COUNTY Personnel Policy, as adopted by the Board of County Commissioners on January 24, 2011 to _____, on this _____ day of _____, 20____.

_____
(Name - Title - Department)

Acknowledgement of Receipt

JEFFERSON COUNTY 000040